**Karl ZYSSET and New-Nel Kitchen Products Company, Plaintiffs,**

v.

**POPEIL BROTHERS, INC., Defendant.**

**Civ. A. No. 57C763.**

United States District Court
N. D. Illinois, E. D.

Oct. 3, 1958.

Albin C. Ahlberg, Chicago, Ill., for Karl Zysset, plaintiff.

Warren C. Horton, Chicago, Ill., for New-Nel Kitchen Products Co., plaintiff.

Jack E. Dominik, Ooms & Dominik, George B. Christensen, Neil McKay, Winston, Strawn, Smith & Patterson, Charles L. Byron, Chicago, Ill., for defendant.

PERRY, District Judge.

This action came before the Court on the Amended Complaint of the plaintiffs against defendant, charging infringement by defendant of United States Letters Patent No. 2,782,826 issued to Karl Zysset, on February 26, 1957. Defendant filed a Counterclaim praying for a declaratory judgment finding the patent in suit to be invalid or not infringed by defendant. The structure charged to infringe both claims of the patent in suit by the Complaint is a food shredder identified herein as Plaintiffs' Exhibit 12. Defendant subsequently amended its counterclaim to ask for a declaratory judgment that a second form of food shredder made by it subsequent to the commencement of this action and identified as Plaintiffs' Exhibits 27 and 28 does not infringe the patent in suit.

Upon full consideration of the record herein, including the testimony of witnesses in open court and the exhibits offered and received in evidence, the Court finds as follows:

Findings of Fact

1. This action was filed on or about April 29, 1957, charging infringement of United States Letters Patent No. 2,-782,826 by food shredders or choppers manufactured and sold by defendant since the issuance of said patent on February 26, 1957, the particular product being charged to infringe all of the claims of said patent being identified herein as Plaintiffs' Exhibit 12.

2. The patent in suit was issued to plaintiff, Karl Zysset, of Lyss, Switzerland, and there is no evidence that the patent has ever been assigned by said plaintiff to any other party. On April 2, 1957, Karl Zysset granted to Arthur O. Nelson and Harold Newman an exclusive license under the patent in suit to make, use and sell the patented invention and that exclusive license agreement was transferred, in writing, on July 10, 1957 to New-Nel Kitchen Products Company, of Chicago, an Illinois corporation, party plaintiff herein, as shown in Plaintiffs' Exhibit 5, and the plaintiffs, together, own all of the rights under said patent in suit.

3. Defendant, Popeil Brothers, Inc., is an Illinois corporation and has its principal place of business at Chicago, Illinois.

4. The parties, by their counsel, stipulated that the defendant, prior to the filing of this action, made and sold vegetable shredders or choppers of the type identified herein as Plaintiffs' Exhibit 12 and that evidence showed that defendant made and sold such devices subsequent to issuance of the patent in suit and continued to make and sell such devices after the filing of this action.

5. Before the patent in suit had been granted and issued by the United States Patent Office and while the application therefor was pending in the United States Patent Office, the defendant purchased in Chicago a vegetable shredder or chopper made in Switzerland under the authority of plaintiff, Karl Zysset, and such device was taken to the office of the defendant company, taken apart and carefully examined by defendant as to the form of its manufacture and method of operation. Said device so purchased by the defendant and marked Plaintiffs' Exhibit 6 was used by defendant as the model from which it made production drawings, molds, dies and tools for the subsequent manufacture by defendant of the structures charged to infringe the patent in suit. Only slight changes were made from the commercial structure purchased by defendant to pro-

duce the article charged to infringe, such changes as there were primarily being the omission of threads between various elements and the location of the attachment of the blade to the blade-holding bar, both of which were said to have reduced the cost of manufacture but neither of which changed the mode of operation or the results obtained thereby in the commercial structure made in Switzerland and purchased by the defendant in the United States, as exemplified in the device marked Plaintiffs' Exhibit 6.

6. In the patent in suit, there is illustrated and described a vegetable shredder or chopper comprising a two-part, bell-like housing having an upper portion and a lower portion adapted to be placed over the goods to be shredded and a sinuous single-piece knife blade mounted at the lower end of an actuating spring-loaded shaft which is manually depressible to place the several cutting portions of the knife blade into chopping relation with the goods to be shredded. Adjacent the lower end portion of the stem is located a checking member attached to the stem and carrying a sleeve having two diametrical cams on the outer face thereof, a helical torsion spring disposed in the sleeve and coiled about the stem, one end of the spring being anchored. Inside the top bell-like portion, there is located a socket having a plurality of internal helical grooves. When the stem is depressed, the spring clutch is disengaged and the knife blade does not rotate in its downward movement. However, on its upward movement near the end thereof, the cams on the checking member enter the helical grooves and the stem at that time being engaged by the spring clutch, the stem and the sinuous blade mounted thereon move into a new position, different from the position of the blade as made on the previous chopping stroke. Within the housing is located a wiper plate having a sinuous opening which substantially matches the shape of the blade and vegetable portions which may adhere to the blade are cleared therefrom on the upward stroke wherein the wiper plate wipes such vegetable fragments from the blade. As described in the patent, the checking member comprises a ring seated on the stem portion and a depending sleeve mounted on the ring. However, both in the Zysset commercial form of this device and in the structures charged to infringe, the ring and the sleeve are combined into an integral unit.

7. While in the commercial devices the ring and the sleeve above-mentioned are combined into an integral unit, they perform precisely the same function operating in precisely the same manner as the ring and sleeve separately function and perform as disclosed in the patent for the same purpose and achieving the same result. It is not a departure from the disclosure of the patent for the ring and sleeve to be made in an integral unit instead of in two separate units.

8. The patent in suit is not limited as to the means of mounting the blade on the actuating stem.

9. The claims of the patent in suit contain no limitations as to whether the portions of the bell-like housing are joined frictionally or by threaded engagement nor is there any limitation in either of the claims of the patent in suit as to the manner of mounting the handle knob at the upper end of the stem.

10. After this action had been filed and was at issue, the defendant commenced the manufacture and sale of a second form of vegetable shredder or chopper as to which it sought the declaratory judgment of this Court that such device identified herein as Plaintiffs' Exhibits 27 and 28 was not an infringement of the patent in suit. This device differed from the first form charged to infringe, Plaintiffs' Exhibit 12, primarily in the construction of the checking member which, in the first form charged to infringe, included a spring clutch which in the second form was changed to a plastic ratchet form of clutch having flexible blades which permitted rotation of the checking member relative to the stem in one direction but prevented such relative rotation in the opposite direction. While different in specific form, the

ratchet-type clutch was designed and intended and intended and actually operates to perform the same function as the spring clutch used in the first form of defendant's device charged to infringe and performs such function in substantially the same manner, to achieve the same result; that is, to permit partial rotation of the blade at the time the cams on the sleeve enter the helical grooves and to prevent rotation of the blade when the stem is depressed. Like the spring clutch, the ratchet clutch is a well-known simple form of one-way clutching, well known in the art as equivalents for the purpose of preventing rotation of an element in one direction and permitting its free rotation in the opposite direction.

11. Karl Zysset, plaintiff, is engaged in the manufacture in Switzerland and the sale of vegetable shredders under the name of Blitzhacker, made in accordance with the patent in suit and as exemplified in the device marked Plaintiffs' Exhibit 6, illustrated and described in the Blitzhacker circulars, Plaintiffs' Exhibits 8c, 8e, 8f, 8g and 8h. Such devices made in Switzerland were first sold in this country in July, 1954. The other plaintiff, New-Nel Kitchen Products Company, exclusive licensee in this country under the patent in suit, commenced the manufacture and sale of vegetable shredders made in accordance with the patent in suit in the summer or fall of 1957. Its devices are exemplified in Plaintiffs' Exhibits 9, 24 and 30 and are illustrated in the drawing marked Plaintiffs' Exhibit 32 and Plaintiffs' Exhibit 37, and in the circulars marked Plaintiffs' Exhibits 11a, 11b, 11c and 11d.

12. The defendant's vegetable shredders or choppers in both forms presented to the Court are sold under various names, including Chop-O-Matic, Roto Chop and Merry-Go-Round. The first form of defendant's device charged to infringe has been identified herein as Plaintiffs' Exhibit 12 and a cut-open sample thereof has been identified as Plaintiffs' Exhibit 34. These exhibits are illustrated in the drawing Plaintiffs' Exhibit 33. The second form of defendant's device brought into this action by defendant's amendment to its Counterclaim for declaratory relief is exemplified in Defendant's Exhibits 27 and 28, illustrated in the drawing Defendant's Exhibit 32.

13. Defendant published catalog sheets or circulars, three of which are identified herein as Plaintiffs' Exhibits 14, 15 and 15a, which illustrate products of the defendant. This advertising matter is laudatory of the devices, is equally applicable both in illustration and descriptive matter to all forms of vegetable shredders or choppers made and sold by defendant, and represents that such devices were originated by or invented by the defendant.

14. The plaintiffs objected to bringing into this action the defendant's so-called second form of vegetable shredder or chopper which was first made after the commencement of this suit on the ground that the Court did not have jurisdiction under Title 28, U.S.Code, Section 2201, contending that there had been no actual controversy between the parties relative to such device and that defendant was actually seeking an advisory opinion of the Court. The Court, however, gave defendant leave to bring the said second form of device before the Court for adjudication.

15. The first form of vegetable shredder or chopper made and sold by defendant, Popeil Brothers, Inc., as exemplified in Plaintiffs' Exhibit 12 and Plaintiffs' Exhibit 34, and as illustrated in the drawing Plaintiffs' Exhibit 33, fully responds to and includes the combination of elements set forth in both claims 1 and 2 of United States Letters Patent No. 2,782,826 here in suit.

16. The so-called second form of vegetable shredder or chopper made and sold by defendant commencing subsequent to the institution of this action and exemplified in Defendant's Exhibits 27 and 28 and illustrated in Defendant's Exhibit 32 likewise responds fully to and includes the combination of elements set forth in claims 1 and 2 of said United States

Letters Patent No. 2,782,826 here in suit, the ratchet form of the checking means in said second form being the full equivalent of the spring clutch described in the patent in suit and used by defendant in the first form of vegetable shredders or choppers charged to infringe.

17. The defendant has cited a substantial number of prior art patents and publications, Defendant's Exhibits 5a to 5k inclusive, including:

| | | | |
|---|---|---|---|
| Blake | – | No. | 95,309 |
| Hard | – | | 137,074 |
| Allen | – | | 267,127 |
| Hansen | – | | 1,023,517 |
| Hanel | – | | 2,140,010 |
| Clark | – | | 2,422,340 |
| Zeller | – | | 2,623,563 |
| Zysset (Austrian) | | | 180,369 |
| Zysset (German) | | | 235,749 |
| Suter (Swiss) | | | 155,720 |

and excerpts from the publication "Ingenious Mechanisms".

The Zysset patents referred to in the foregoing group were issued upon the applications of Karl Zysset and do not represent prior art as to the patent in suit.

18. The Hanel patent No. 2,140,010 and the Suter Swiss patent No. 155,720 were expressly considered by the United States Patent Office before grant of the patent in suit and none of the other references in the prior art cited by defendant can be considered as better or closer prior art than those expressly considered by the Patent Office.

19. None of the references cited by the defendant discloses in combination the structure of the patent in suit and it does not appear from any evidence that any of such disclosures would have suggested to a person skilled in the art the vegetable shredder or chopper invented by Karl Zysset at the time of his invention thereof.

20. One of the patents primarily relied upon by defendant is Hanel patent No. 2,140,010 which was expressly considered by the Patent Office before the patent in suit was allowed, and the Hanel patent does not disclose a structure which will operate to perform the functions desired and intended by the patent in suit. In the Hanel patent, the blade is not advanced in the manner disclosed by the Zysset patent in suit to cut up the food to be chopped in the manner disclosed by Zysset. At the trial, defendant produced Mr. Hanel as a witness, although no previous notice thereof was given to plaintiffs and although no knowledge or structure known to Mr. Hanel, other than that shown in his patent No. 2,140,010 was set up in the pleadings or in any notice as a matter of defense. The only address of Mr. Hanel as to which plaintiffs were given any information either in the pleadings or by notice was the address given in the Hanel patent as Jackson Heights, New York. However, Mr. Hanel testified at the trial that he had not lived in Jackson Heights for a considerable period and that he does reside at R. D. No. 1, Box 242, Iona Lake Road, Franklinville, New Jersey. Over the objections of plaintiffs that there was no basis in any pleading or notice for such testimony, Mr. Hanel testified that in about 1938 he made models of one or more onion choppers, one of which, Defendant's Exhibit 16, corresponded to Fig. 5 of his patent. He also testified that another model, Defendant's Exhibit 12, which he said he had made and which he produced at the trial could have been modified to perform one of the functions of the Zysset patent in suit, namely, rotation of the blade in the latter part of the upward stroke thereof. While plaintiffs' objections to the testimony of Mr. Hanel for lack of notice may have been proper, the Court finds that Hanel's testimony as to what he actually did, even if true and even if properly corroborated, would not have amounted to the combination disclosed and claimed in the Zysset patent in suit. What Mr. Hanel may now believe that he could have done after he has knowledge of the Zysset patent and its structure is of no consequence.

21. None of the prior art patents or publications anticipates the claims of the

patent in suit and it would not have been obvious to one skilled in the art, at the time that any of such prior art disclosures were made, to have made therefrom or in combination with the other prior art patents the invention described, disclosed and defined in the patent in suit.

22. Each of the claims of the patent in suit clearly and definitely defines a combination of elements cooperating together to provide a novel food shredder or chopper possessing many advantages over any of the structures of the prior art.

23. The patent in suit is a clear, concise and exact description of the Zysset invention, in such terms as to enable one skilled in the art to make and use the same.

24. The invention defined by claims 1 and 2 of the patent in suit was not patented or described in any printed publication or patent in this country or any foreign country before the filing date of the patent in suit.

25. The Zysset German patent No. 935,749, Defendant's Exhibit 5i, was not patented in Germany in accordance with the meaning of the United States Statutes, until November 24, 1955, which is the "ausgegeben" or publication date of the German patent, and that is the effective date of said patent for the purposes of this suit rather than the filing date of the German application namely, March 10, 1954, as claimed by defendant.

26. The record contains no evidence of prior invention, public use or sale of the invention described and claimed in the patent in suit prior to the filing date of the application therefor, which would render the patent invalid.

27. The file wrapper of the patent in suit shows that there were no acts, express or implied, taken by the applicant for the patent in suit which create any estoppel or restriction of the claims in suit in so far as their present interpretation is to be made. The claims of the patent in suit as first presented were rejected by the Patent Office because of formal matters only and no amendments or changes were made to avoid prior art which would so restrict either claim of the patent in suit as to avoid infringement by the defendant in its manufacture and sale of devices like Plaintiffs' Exhibits 12 and 34 and Defendant's Exhibits 27 and 28 illustrated in the drawings, Plaintiffs' Exhibit 33 and Defendant's Exhibit 32, respectively.

28. Defendant carried on some negotiations with the representatives of Karl Zysset, plaintiff, for the purchase of the latter's vegetable shredders or choppers or for a license under Zysset's patent rights and therefore knew of the pendency of the application for the patent in suit before it had actually sold vegetable shredders and choppers for which it used a Zysset chopper as a guide or model but such negotiations did not culminate in any agreement between the parties and the terms offered to Zysset by defendant were so low as to make it appear that the defendant never expected or intended that such negotiations would culminate in an actual agreement. With full knowledge of the pendency of Zysset's patent applications, the defendant informed the plaintiff Zysset that it intended to proceed with its manufacture and sale of the vegetable shredder and chopper charged to infringe whether or not it had a license from plaintiff and it proceeded to do so. The Court finds that the defendant deliberately copied the invention of the patent in suit without authority.

29. Plaintiff Karl Zysset granted an exclusive license, Plaintiffs' Exhibit 4, under the patent in suit, to Arthur O. Nelson and Harold Newman who paid $21,000 royalties as down payment thereunder and committed themselves to additional royalties in the amounts set forth in said license. The license was obtained by Arthur O. Nelson and Harold Newman expressly for New-Nel Kitchen Products Company, which was subsequently formed as an Illinois corporation for the purpose of manufacturing and selling

the patented invention and such exclusive license agreement was assigned to New-Nel Kitchen Products Company with the approval of Karl Zysset as shown in Plaintiffs' Exhibit 5.

30. The equities in this case are with the plaintiffs, Karl Zysset and New-Nel Kitchen Products Company.

31. The device of the patent in suit has had great commercial success and more than 2,000,000 of such devices have been sold by the defendant and by the plaintiff, New-Nel Kitchen Products Company, in the United States.

32. It was an unfair practice for the defendant to have used the commercial structures made by plaintiff, Karl Zysset, in Switzerland, as models for such devices to be made by defendant in the United States although it did not constitute an infringement of the patent in suit until that patent had actually issued. Continuance of such practices after the issuance of the patent in suit was an unfair and inequitable act by the defendant in aggravation of the infringement charged.

33. The fact that defendant obtained a patent on its particular form of attachment of the knife blade to the shaft does not avoid infringement of the patent in suit. The particular means of attachment used by defendant is within the scope of both claims of the patent in suit and furthermore constitutes no change in the manner of operation or in the results of operation of the relative structures, both that of plaintiff and its licensee and those of the defendant operating in substantially the same manner to achieve substantially the same result through use of substantially the same means.

34. In addition to its counterclaims for declaratory judgment as to validity and infringement of the patent in suit, defendant filed an "additional counterclaim" herein charging a conspiracy by plaintiffs to engage in acts of unfair competition against defendant and to bring about a violation of an alleged contract between defendant and Arthur O. Nelson. No evidence was presented in support of said counterclaim and the same should be dismissed.

### Conclusions of Law

1. The Court has jurisdiction of the parties and of the subject-matter of this action.

2. Plaintiff Karl Zysset is and has been the owner of United States Letters Patent No. 2,782,826 since said patent was issued to him on February 26, 1957.

3. The plaintiff New-Nel Kitchen Products Company is the exclusive licensee under the patent in suit by virtue of an exclusive license agreement dated April 2, 1957, Plaintiff's Exhibit 4, and the assignment thereof dated July 10, 1957, Plaintiff's Exhibit 5.

4. United States Letters Patent No. 2,782,826 and both of the claims thereof are good and valid in law.

5. Both of the claims of the patent in suit No. 2,782,826 have been and are being infringed by the defendant in the manufacture and sale of devices of the kind exemplified in Plaintiff's Exhibit 12 and Plaintiff's Exhibit 34 and as illustrated in the drawing marked Plaintiff's Exhibit 33 and as exemplified in the devices marked Defendant's Exhibits 27 and 28 and as illustrated in the drawing marked Defendant's Exhibit 32.

6. None of the prior art references discloses the combination of a housing having a socket provided with helical grooves cooperating with an indexing device for advancing a food chopper blade near the end of the upward stroke nor do they disclose a sinuous blade operating through a sinuous slot in a wiper plate. Such a structure as shown and defined in the patent in suit constitutes a patentable invention and the patent in suit was legally and lawfully issued by the United States Patent Office.

7. The Zysset patent discloses an operative structure and clearly describes the construction and operation thereof in

such terms as to be clearly understood by those skilled in the art to which the patent appertains.

8. German patent No. 935,749, Defendant's Exhibit 5i, does not constitute prior art against the patent in suit.

9. Plaintiffs are entitled to an injunction restraining the defendant against committing further acts of infringement of either of the claims of the Zysset patent in suit No. 2,782,826 in the manufacture or sale of vegetable shredders of the kind exemplified in Plaintiffs' Exhibits 12 and 34 and illustrated in the drawing, Plaintiffs' Exhibit 33 and as exemplified in Defendant's Exhibits 27 and 28 and illustrated in the drawing Defendant's Exhibit 32.

10. Plaintiffs are entitled to recover from defendant the damages or profits as provided in the patent statutes of the United States which have been occasioned by defendant's infringement of the Zysset patent No. 2,782,826 together with interest thereon and the costs of this suit.

11. Plaintiffs are entitled to an accounting by defendant to determine the damages which plaintiffs shall recover from defendant and the Court, upon appropriate application, will appoint a Master for the purposes of such an accounting. After such accounting has been had, the Court will determine whether in view of the willful nature of defendant's infringement the amount of damages so found shall be increased as provided by statute and the Court shall at the same time determine the amount which shall be allowed to plaintiffs for their costs and disbursements herein. When the amount of the judgment, including costs, shall have been finally determined, plaintiffs shall have judgment therefor and shall be entitled to execution thereon.

12. Defendant is not entitled to any relief under its counterclaims herein, and the same should be dismissed with prejudice and with costs to plaintiffs.