**W. R. GRACE & CO., a corporation,**
**Plaintiff,**

v.

**PARK MANUFACTURING COMPANY,**
a corporation, et al., Defendants.

No. CV 70–131–D.

United States District Court,
E. D. Illinois.

March 29, 1974.

## OPINION AND FINDINGS OF FACT AND CONCLUSIONS OF LAW

WISE, Chief Judge.

This matter is before the Court on a complaint for infringement of three United States patents owned by the plaintiff, W. R. Grace & Co. The patents relate to double wall, hollow plastic containers made by blow molding methods and utilizing specially designed apparatus. Specifically, the patent claims in issue are claims 1–6 of U. S. patent No. 3,317,955, granted May 9, 1967, and covering the apparatus for making the containers; claims 1, 2 and 4 of U. S. patent No. 3,441,071, granted April 29, 1969, and covering the containers themselves; and claims 2–6 of U. S. patent No. 3,452,-125, granted June 24, 1969, and covering the methods for making the containers.

As their basic defense against these charges of infringement, the defendants have asserted that the patent claims are invalid because the subject matter they cover was anticipated or rendered obvious to one skilled in the art by prior teachings of certain patents and publications, or had been previously used on a commercial scale. Additionally, the defendants have asserted that the patent claims are unenforceable because the patentees did not disclose the existence of a certain Italian patent to the Patent Examiner.

A trial of these issues was had before the Court without a jury, commencing June 12, 1972, during which extensive evidence was introduced by all parties and following which such parties submitted briefs as well as proposed findings of fact and conclusions of law.

F. Daniel Welsch, Graham, Meyer, Young, Welsch & Maton, Danville, Ill., George T. Mobille and George M. Sirilla, Cushman, Darby & Cushman, Washington, D. C., John J. Toney, Duncan, S. C., for plaintiff.

John B. Jenkins, Gunn, Hickman, Kesler, Jenkins, & Vogel, Ltd., Danville, Ill., and Michael G. Berkman, Kegan, Kegan & Berkman, and Thomas F. McWilliams, Chicago, Ill., for defendants.

## INFRINGEMENT

The record discloses that the defendants have manufactured and sold double wall, hollow plastic containers made by a blow molding method, as evidenced by exemplary containers and by photographs with related testimony from

the defendants describing the apparatus and method used. Such evidence was analyzed at trial through expert testimony and shown to fully conform with the claimed apparatus, containers, and methods of the aforesaid patent claims, thus establishing infringement in accordance with the applicable statute, 35 U.S.C. Section 271.

■ The following are applicable cases in this Circuit to the effect that infringement of a patent is established when the patent owner demonstrates that the alleged infringer has made, used or sold a product, process or apparatus coming within the scope of the claimed inventions. Reese v. Elkhart Welding & Boiler Works, Inc., 447 F.2d 517, 527 (7th Cir. 1971) and University of Illinois Foundation v. Block Drug Co., 133 F. Supp. 580, 584 (E.D.Ill.1955), aff'd. 241 F.2d 6 (7th Cir. 1957), cert. denied 354 U.S. 922, 77 S.Ct. 1382, 1 L.Ed.2d 1437, for the product; LaSalle Street Press v. McCormick & Henderson, Inc., 445 F.2d 84, 94 (7th Cir. 1971) and Binks Mfg. Co. v. Ransburg Electro-Coating Corp., 281 F.2d 252, 258 (7th Cir. 1960), cert. granted 364 U.S. 926, 81 S.Ct. 353, 5 L.Ed.2d 265, but dismissed 366 U.S. 211, 81 S.Ct. 1091, 6 L.Ed.2d 239, for the process; and Artmoore Co. v. Dayless Mfg. Co., 208 F.2d 1, 4 (7th Cir. 1953), cert. denied 347 U.S. 920, 74 S.Ct. 518, 98 L.Ed. 1075, and Kalo Inoculant Co. v. Funk Bros. Seed Co., 161 F.2d 981, 988–989 (7th Cir. 1947), rev'd. on other grounds 333 U.S. 127, 68 S.Ct. 440, 92 L.Ed. 588, for the apparatus.

The evidence of record on infringement also shows that it was deliberate in that the defendants made the infringing containers with knowledge of the pendency of the plaintiff's patent applications and the subsequent grant therefrom of the patents here in suit. Moreover, such testimony showed lack of any attempts on the part of the defendants to develop their own competitive but non-infringing containers and, instead, they determined to copy the Grace container then on the market.

Where claims are infringed in a willful and deliberate manner, sanctions are provided by 35 U.S.C. Section 284 and 285. Copease Mfg. Co. v. American Photocopy Equipment Co., 298 F.2d 772, 783–784 (7th Cir. 1961); Dixie Cup Co. v. Paper Container Mfg. Co., 169 F.2d 645, 650–651 (7th Cir. 1948), cert. denied 317 U.S. 686, 63 S.Ct. 260, 87 L.Ed. 550; Maxon Premix Burner Co. v. Mid-Continent Metal Products Co., 279 F.Supp. 164, 181 (N.D.Ill.1967); Zysset v. Popeil Brothers Inc., 167 F.Supp. 362, 368, 369 (N.D.Ill.1958), aff'd. 276 F.2d 354 (7th Cir. 1960), cert. denied 364 U.S. 826, 81 S.Ct. 62, 5 L.Ed.2d 54.

## PRIOR ART

The prior art developed by expert testimony at trial centered upon various combinations of two Italian patents, Nos. 654,579 (Fiori) and 597,021 (Fiorin), two U.S. patents, Nos. 3,078,508 (Martin) and 2,687,157 (Cowan), as well as an article published in the magazine, "Product Engineering" and a prior container called the "Pinckney box". Suffice it to say that the prior patents, at best, merely offered the inventors a starting point for the further work that was necessary to conceive the inventions. Furthermore, the "Product Engineering" article is no more relevant than the patents, and the Pinckney box was an experimental container constituting nothing but an abandoned experiment.

The plaintiff also argued with respect to the aforesaid Fiori Italian patent No. 654,579 that, for the purpose of anticipation, it is limited only to what is clearly patented by its claims because of a failure on the part of the defendants to prove that it was reduced to a printed publication either earlier than the date of the inventions in suit or more than one year prior to the date of filing of the patent applications thereon. Bendix Corporation v. Balax, Inc., 421 F.2d 809, 813 (7th Cir. 1970), cert. denied 399 U.S. 911, 90 S.Ct. 2203, 26 L.Ed.2d 562; Reeves Brothers, Inc. v. United States Laminating Corp., 282 F.Supp. 118, 136–137

(E.D.N.Y.1968), aff'd. 417 F.2d 869 (2nd Cir. 1969); Carter Products, Inc. v. Colgate-Palmolive Co., 130 F.Supp. 557, 566 (D.Md.1955), aff'd. 230 F.2d 855 (4th Cir. 1956), cert. denied 352 U.S. 843, 77 S.Ct. 43, 1 L.Ed.2d 59. However, regardless of whether that Italian patent is limited to its patent claims or expanded to include its specification and drawings, it fails to anticipate because, *inter alia*, it does not disclose a container made in accordance with blow molding techniques using a plastic tube (known in the art as a "parison"), and male and female mold sections in the manner contemplated by the claims here in suit.

In summation, the prior art relied upon by the defendants for the purpose of anticipating or rendering obvious the methods of claims 2–6 of U.S. patent No. 3,452,125 does not teach the claimed method of blow molding double wall, hollow plastic containers with or without an integral hinge by the use of a tubular parison, male and female mold sections, and the application of a vacuum between the parison wall and the interior of the female mold section so as to obviate the threat of parison collapse engendered by the protruding male mold section as it closes well into the female mold section; neither does the prior art relied upon by the defendants for the purpose of anticipating or rendering obvious the apparatus of claims 1–6 of U.S. patent No. 3,317,955 teach the claimed combination of blow molding apparatus including male and female mold sections having means for producing an integrally hinged plastic double wall, hollow container and vacuum apparatus used therewith; nor does the prior art relied upon by the defendants for the purpose of anticipating or rendering obvious the containers of claims 1, 2 and 4 of U.S. patent No. 3,441,071 teach the claimed plastic blow molded double wall, hollow container having an integrally hinged top and bottom and wherein the container is made from a single tubular parison with the resulting hinge being thinner than the integral container walls. Even if one skilled in the art had before him at the time of the inventions in suit, the teachings of the prior art relied upon by defendants and particularly, Fiori, Fiorin, Martin, Cowan and the "Product Engineering" article discussed above, such teachings would not have disclosed or rendered them obvious to him.

■ Applicable case law in this Circuit holds that proof of patent invalidity must be established by clear and convincing evidence which is absent from this record. See Malsbary Manufacturing Co. v. Ald, Inc., 447 F.2d 809, 812 (7th Cir. 1971); Ortman v. Maass, 391 F.2d 677, 681 (7th Cir. 1968); Walt Disney Productions v. Niles Communications Center, Inc., 369 F.2d 230, 234 (7th Cir. 1966). Furthermore, this premise is bolstered where, as here, the earlier disclosures relied upon as prior art offer nothing more than a starting point for further experiments, General Foods Corp. v. Triangle Mfg. Co., 253 F.2d 227, 230 (7th Cir. 1958).

Positive tests bearing on validity and applicable in this Circuit are also disclosed in the record. These are (1) that the patented inventions fulfilled a long-felt need in the industry to which they apply, Rex Chainbelt, Inc. v. General Kinematics Corporation, 363 F.2d 336, 337 (7th Cir. 1966); (2) that the patented inventions met with substantial success upon their introduction to market, Rex Chainbelt, Inc. v. General Kinematics, supra, at page 337; Continental Can Co. v. Anchor Hocking Glass Corp., 362 F.2d 123, 124 (7th Cir. 1966); (3) that the defendants' attack upon the inventions as being "obvious" is viewed from the benefit of hindsight, long after the fact of invention, Walt Disney Productions v. Niles Communications Center, Inc., *supra* at page 234; and (4) that the accused infringers themselves recognized that the patented inventions were truly meritorious, AMP Incorporated v. Molex Products Co., 329 F.Supp. 1364, 1371 (N.D.Ill.1971).

■ Measured by the foregoing criteria applicable to this Circuit, the sub-

ject matter of the claims at issue was not obvious to those skilled in the art at the time the inventions were made, particularly to those such as Pinckney who tried and failed to comprehend the inventions as well as to the defendants who found it necessary to base the development of their containers on plaintiff's patented inventions. Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc., 436 F.2d 1180, 1186 (7th Cir. 1971), dismissed pursuant to Rule 60, Supreme Court Rules, 403 U.S. 942, 91 S.Ct. 2270, 29 L.Ed.2d 722. The imitation of the patented inventions by defendants is conclusive evidence of what they think of the patents and is persuasive of what the rest of the world ought to think. Anderson Co. v. Sears, Roebuck & Co., 165 F.Supp. 611, 623 (N.D.Ill.1958), mod. on other grounds, 265 F.2d 755 (7th Cir. 1959). See also Copease Mfg. Co. v. American Photocopy Equipment Co., *supra* at page 781; Ric-Wil Co. v. E. B. Kaiser Co., 179 F.2d 401, 404 (7th Cir. 1950), cert. denied 339 U.S. 958, 70 S.Ct. 981, 94 L.Ed. 1369.

As for the so-called Pinckney box, case law has long recognized that such unsuccessful attempts to develop a commercially acceptable product are nothing more than abandoned experiments that in no way enrich the store of common knowledge available to the inventors at the time they conceived their inventions. Coffin v. Ogden, 18 Wall. 120, 124, 85 U.S. 120, 124, 21 L.Ed. 821, 823 (1874); Stamicarbon, N.V. v. Escambia Chemical Corp., 430 F.2d 920, 927 (5th Cir. 1970), cert. denied 400 U.S. 944, 91 S.Ct. 345, 27 L.Ed. 248; and Illinois Tool Works, Inc. v. Continental Can Company, 273 F.Supp. 94, 109–110 (N.D.Ill.1967), aff'd. 397 F.2d 517 (7th Cir. 1968). "Patents for useful inventions ought not to be invalidated and held for naught because of such excursions into the boneyard of failures and abandoned experiments." Reynolds v. Whitin Mach. Works, 167 F.2d 78, 84 (4th Cir. 1948), cert. denied 334 U.S. 844, 68 S.Ct. 1513, 92 L.Ed. 1768.

## ENFORCEABILITY OF THE PATENT CLAIMS

█ The defendants sought to prove at trial that the patentees deliberately withheld from the Patent Examiner knowledge of the existence of the above-discussed Italian patent No. 597,021 (Fiorin). However, plaintiff demonstrated that the aforesaid U.S. patent 3,078,508 (Martin) was specifically drawn to the attention of the Patent Examiner by the patentees and that this Martin patent teaches at least as much about the involved inventions as does the Italian patent to Fiorin. This Circuit in, for example, National Dairy Products Corp. v. Borden Co., 394 F.2d 887, 891 (7th Cir. 1968), cert. denied 393 U.S. 953, 89 S.Ct. 378, 21 L.Ed.2d 364, recognized that such a circumstance completely negates any charge of fraud or unclean hands on the part of a patentee. See also Bendix Corporation v. Balax, Inc., *supra* at page 819, TSC Industries, Inc. v. International Harvester Co., 406 F.2d 53, 57 (7th Cir. 1968), and Ransburg Electro-Coating Corp. v. Nordson Corp., 293 F.Supp. 448, 483 (N.D.Ill.1968).

█ Furthermore, the record at trial showed that the Fiorin patent was cited in a parent patent application and, therefore, is properly deemed to have been considered though not specifically cited in the subsequent divisional application. See United States Gypsum Co. v. National Gypsum Co., 440 F.2d 510, 514 (7th Cir. 1971), cert. denied 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 702, reh. denied 404 U.S. 875, 92 S.Ct. 31, 30 L.Ed. 2d 121.

█ It is true that the Patent Examiner involved, who is no longer with the Patent Office, appeared at the trial and testified that had he known of the Italian patent to Fiorin he would not have allowed the claim in issue (claim 4 of the method patent in suit). Although such testimony was admitted into the record, it is also clear that the Martin patent was specifically drawn to the Examiner's attention by the patentees and, as pre-

viously noted, that patent teaches at least as much about the inventions in suit as does the Italian patent to Fiorin. In any event, it is a well established principle of law that a person such as a Patent Examiner operating in a quasi-judicial capacity, cannot subsequently appear at a trial and have any decisive credence given to his testimony that his prior judgment was wrong. Fayerweather v. Ritch, 195 U.S. 276, 306–307, 25 S.Ct. 58, 49 L.Ed. 193, (1904). See also United States v. Morgan, 313 U.S. 409, 421–422, 85 L.Ed. 1429, 61 S.Ct. 999 (1941), reh. denied 314 U.S. 707, 62 S.Ct. 52, 86 L.Ed. 565; Shaffer Tool Works v. Joy Mfg. Co., 167 USPQ 170–171 (S.D.Tex.1970); In re Mayewsky, 162 USPQ 86, 88–89 (E.D. Va.1969).

## MISCELLANEOUS DEFENSES

Two miscellaneous points were also raised by the defendants, one directed to the language of claim 4 of the method patent and the other to the effect that the specifications of the product and method patents are deficient in their disclosures of the inventions covered thereby. Neither of these points is considered to have substance in the record.

## SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

The foregoing opinion shall serve as the Court's Findings of Fact and Conclusions of Law as supplemented by the following additional enumerated findings and conclusions.

*Supplemental Findings of Fact*

1. Plaintiff, W. R. Grace & Co. (hereafter Grace) is a Connecticut corporation which, *inter alia,* manufactures and sells double wall, hollow plastic containers made by blow molded methods. Defendant, Park Manufacturing Company (hereafter Park) is an Illinois corporation that wholly owns co-defendant J. E. Industrial Molding, Inc. (hereafter JEIM), a Delaware corporation. Both Park and JEIM manufacture containers but only the latter makes the accused containers. The third defendant, Jack Evans (hereafter Evans) is an individual who has had managerial control of Park and JEIM and who has supervised the manufacture and promotion of the accused products. Evans had no experience in plastic container production prior to his association with JEIM.

2. On December 22, 1964, Grace acquired from Airmold Plastics, Inc. (hereafter Airmold) the latter's blow molding business including the inventions here in suit. Airmold was founded in 1962 by the inventors of such inventions, Peter T. Schurman and Raymond C. Confer (hereafter respectively Schurman and Confer). Prior to Airmold's acquisition by Grace the former used the services of two individuals, Robert W. Colcord and Leo W. Curley (hereafter, respectively, Colcord and Curley), whose activities were essentially that of sales agents. For a time after Grace acquired Airmold, Colcord and Curley continued on in that same capacity under a similar arrangement as they previously had with Airmold.

3. Between late 1963 and early 1964, Schurman and Confer conceived the inventions here in suit and commenced commercial development thereof. Colcord was actively involved in that development from its inception not only in connection with sales, but production as well by means of which he acquired useful know-how thereon.

4. After Grace acquired Airmold, it continued the manufacture of plastic containers of the type here in issue. In this regard, the D. J. Davis Company (hereafter D. J. Davis) that was a supplier of packaged tools for Sears, Roebuck and Co. (hereafter Sears) ordered such containers from Grace; and Colcord played an active part in obtaining that order. The style of such container was designed by a Grace consultant named John Stone (hereafter Stone).

5. During the same time span, Park was supplying metal containers to Sears, functioning like D. J. Davis by actually

procuring and packaging tools in such containers before forwarding same to Sears for retail distribution. As a result, Evans, through Park, became aware that Grace was supplying the D. J. Davis containers for use by Sears. Also, Colcord commenced negotiating with Evans and Sears for the sale of additional plastic containers corresponding to those previously supplied to D. J. Davis, but this time with the intention that Park would act in D. J. Davis's role to package the tools in such containers and send them on to Sears. This order was never consummated because Park, through its president, Evans, embarked on a program that ultimately led to the formation of JEIM and the employment of Colcord and Stone as well as the fulfillment by Park of the contemplated order previously under negotiation with Grace. During this time period, Evans anticipated a patent conflict with Grace and requested a license from Grace, which request was taken under advisement, but not refused. Regardless, Evans, with the assistance of Colcord, continued in the above-described activities which were culminated in the winter of 1966 by the sale to Sears of the accused container.

6. All three patents here in suit relate to so-called double wall, hollow plastic containers made by a blow molding method and utilizing specially designed apparatus. The entire plastic molding field as well as the blow molding used in the patented inventions were summarized by plaintiff's expert, George E. Pickering, who had extensive experience in these technical areas. U. S. Patent No. 3,317,-955 (hereafter the '955 patent) covers the apparatus; U. S. Patent No. 3,441,-071 (hereafter the '071 patent) covers the resulting containers; and U. S. Patent No. 3,452,125 (hereafter the '125 patent) covers the method. More specifically, the '955 patent covers blow molding apparatus equipped with a unique pair of mold sections that are capable of making in one closing of the mold a double wall, hollow plastic container simultaneously with an integral hinge that connects the top and bottom of the container. The '071 patent covers the container made by that apparatus. The '125 patent covers the method of making the container using the said apparatus and it further includes a process for avoiding a phenomenon identified as parison collapse that occurs when parison walls touch each other while the mold sections are closing. In the present invention, the problem of parison collapse is unique and arises in the case of deep penetration of a male mold section into a female mold section. It is obviated by the withdrawal of air from between the parison and the interior of the female mold section during the critical time of the closing movement of the mold and, more specifically, after the parison wall makes contact with the female mold section so as to define an enclosed space from which air can be so withdrawn.

7. Among the prior art urged by the defendants is a container sought to be developed by Pinckney Molded Plastics (hereafter Pinckney) for use with a record player. Although Pinckney invested a substantial amount of money and time in its efforts to develop that container, it never produced one that was acceptable to the intended purchaser so that the project was abandoned. Such unsuccessful efforts by Pinckney personnel who were even assisted by experts of the Phillips Petroleum Company lends strength to the patents here in suit. Furthermore, Evans consulted with one of the leading manufacturers of blow molding equipment at the time he was endeavoring to commence marketing the accused containers and such manufacturer was unable to provide the needed expertise until after lengthy correspondence with Colcord and personal visits to the headquarters of JEIM, which further demonstrates the novelty of the patented inventions.

8. As found heretofore, the prior art asserted by defendants and developed by expert testimony at trial centered upon a number of U. S. and foreign patents and a magazine article, as well as the above described Pinckney box. These prior patents and publications neither

anticipate nor render obvious the inventions in suit. In particular,

(a) The Fiori Italian patent No. 654,-579 discloses a plastic box having a double wall top and bottom joined by an integral hinge wherein the hollow interiors of the box walls are adapted to contain a thermal material such as dry ice to provide a portable ice box. At best, the disclosed method for making the box is entirely different from the inventions in suit by reason of the use of two separate sheets of plastic material, one sheet constituting the exterior wall of the box and the other being the interior wall with both sheets functioning to operate as a hinge having a thickness corresponding to the combined thickness of the two sheet layers. In short, nowhere does Fiori disclose an integrally hinged container made from a parison and male and female mold sections while using a vacuum control in the manner contemplated by the inventions here in suit.

(b) U. S. patent No. 3,078,508 to Martin simply discloses a method of making single wall, plastic bottles by blow molding a tubular parison into a mold consisting of a pair of female mold sections. In this connection, Martin also discloses the use of a vacuum but such is applied to the interior of the mold after it is fully closed around the parison, essentially to evacuate residual air from within the mold. Martin is completely devoid of any disclosure of double wall boxes or of apparatus for producing such boxes using a male and female mold section and the hinge forming means of the inventions in suit. Martin's use of a vacuum differs from the apparatus and method inventions in suit since, contrary to Martin, those inventions utilize the vacuum in the interior of a mold comprising male and female mold sections before they are fully closed and, more precisely, after the parison wall first contacts the female mold section, all for the purpose of preventing parison collapse.

(c) U. S. patent No. 2,687,157 to Cowan discloses an injection molded, single wall container being completely devoid of any teaching of a hollow, double wall container having a pressed laminate hinge and made from a tubular parison by means of male and female mold sections, or of the use of a vacuum in connection therewith.

(d) The *Product Engineering* article of January 16, 1961 does teach the use of vacuum in connection with blow molding apparatus but such apparatus does not involve the use of male and female mold sections in conjunction with a vacuum as heretofore described nor the production of the integral hinge feature.

(e) The other cited Italian patent No. 597,021 to Fiorin is much like the Martin '508 patent in that it, too discloses a method of making single wall plastic bottles by blow molding a tubular parison into a mold consisting of a pair of female mold sections. The Fiorin patent is deficient in its teachings for reasons discussed above in connection with Martin.

9. The apparatus used at JEIM for the production of the accused containers meets every limitation of claims 1–6 of the '955 patent. Specifically, the JEIM blow molding apparatus is used for forming hollow, double wall plastic containers; it includes mold cavity faces defining outer and inner walls of the container top and bottom (male and female mold sections), and means for pinching and welding a tubular thermoplastic parison between said male and female mold sections so as to provide an integral hinge connecting the container top and bottom, as well as means for introducing blow air into the parison; and it includes vacuum means for withdrawing air from between the parison wall and the interior of the female mold section to hold said parison against the female mold section when the mold sections are closing upon each other and prior to the introduction of blow air into the parison.

10. The accused integrally hinged containers made and sold by JEIM meet every limitation of claims 1, 2 and 4 of the '071 patent. Specifically, such containers include a top, bottom, and integral hinge, all formed from a single plastic tubular parison with the top and bottom being of hollow, double wall construction and the hinge being a pressed laminate formed from the parison that is thinner than the adjacent wall areas of said top and bottom. Since the record shows that Park has distributed these infringing containers, it, too, infringes claims 1, 2 and 4 of the '071 patent.

11. The method used at JEIM for the production of the accused containers meets every limitation of method claims 2–6 of the '125 patent. Specifically, the JEIM method produces a double wall, integrally hinged container by using a plastic tubular parison, male and female mold sections, i. e., where the male mold section projects inwardly into the female mold section in the closed position around the parison, forming said integral hinge by compressing and pinching together the walls of said parison in predetermined areas, and using vacuum to prevent collapse of the parison during the closing of the mold sections but prior to the introduction of air for the formation of the double wall container. Although claim 4 of the '125 patent does not call for the formation of an integral hinge, the above-described JEIM method is, nevertheless, an infringement thereof. Furthermore, JEIM has used such method to make containers that are not integrally hinged and claim 4 clearly covers JEIM's production of such containers. In this regard, though claim 4 does not specifically identify the mold sections as being of male and female construction nor the vacuum as applied in the space between the enclosed parison wall and the female mold section, the patent specification clarifies these points, to wit, male and female mold sections are clearly contemplated therein since that is the mold configuration giving rise to the unique parison collapse phenome-

non being claimed and the vacuum must be applied during the closing of the mold in the space between the enclosed parison wall and the female mold section if, for no other reason than that the male mold section does not lead to an enclosed area when it makes contact with the parison wall.

12. As found heretofore, Park, through its president, Evans, carried out a program that ultimately led to the formation of JEIM and its subsequent production of the accused containers. Thus, Park actively induced such activities of JEIM that have been found to infringe the claims of the method and apparatus patents here in suit and, therefore, is jointly liable for such infringement.

13. As for Evans himself, it is indisputable that he had full managerial and policy control over both Park and JEIM during the relevant time period, having actively participated in the design, manufacture, and promotion of the accused containers from which he derived direct benefits as the controlling stockholder of those companies. It is true that he first asked for a license from Grace. However, rather than await resolution of Grace's licensing policy, he made the personal decision to proceed with the manufacture and sale of the infringing articles in a manner that far transcended his role as an officer of Park and JEIM. In short, he used these corporations as an instrument to carry out his plan and, for that reason, is equally responsible for the infringement that followed.

*Supplemental Conclusions of Law*

1. This Court has jurisdiction of the parties and the subject matter, and has venue of this action.

2. Under 35 U.S.C. Section 103, the efforts of prior workers as well as the scope and content of the prior art are to be determined; the success or lack of success by such prior workers and the differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved; against this background the obviousness or non-obvi-

ousness of the subject matter is determined. Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). In this regard, the usual way of determining "the level of ordinary skill" in a particular art is by referring to the subjective reaction of a person thoroughly familiar with the particular art and, if possible, one who practiced the art at the crucial time in question. Malsbary Manufacturing Co. v. Ald, Inc., *supra* at page 811. Plaintiff's expert, Pickering, qualifies in all respects.

3. If the patented subject matter goes against the teachings of the prior art, as is the case with the controlled use of vacuum, this is a further indication of the unobviousness thereof. United States v. Adams, 383 U.S. 39, 51–52, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

4. When the specification and claims of a patent disclose a practicable way in which to practice the claimed invention, neither the specification nor the claims are indefinite. Webster Loom Co. v. Higgins, 105 U.S. 580, 586, 26 L.Ed. 1177 (1882); Armstrong v. Motorola, Inc., 374 F.2d 764, 771 (7th Cir. 1967), cert. denied 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88 (1967); Canaan Products, Inc. v. Edward Don & Co., 273 F.Supp. 492, 501 (N.D.Ill.1966), aff'd 388 F.2d 540 (7th Cir. 1968); Remington Cash Register Co. v. National Cash Register Co., 6 F.2d 585, 621 (D.Conn. 1925). Furthermore, the specification is intended to be utilized in construing the claims and both are to be read for the purpose of ascertaining the claimed invention. United States v. Adams, *supra* at page 48–49; The International Nickel Company, Inc. v. United States, 175 USPQ 209, 214 (U.S.Ct.Cls.1972).

5. The patents in suit, Nos. 3,317,-955; 3,441,071; and 3,452,125 are good and valid in law; in particular, claims 1–6 of patent 3,317,955, claims 1, 2 and 4 of patent 3,441,071, and claims 2–6 of patent 3,452,125, to which the allegations of patent infringement have been directed by plaintiff, are valid and enforceable.

6. The apparatus used by the defendant, JEIM, for the production of the accused containers directly infringes claims 1–6 of U. S. patent 3,317,955. Further, the said containers made with such apparatus infringe claims 1, 2 and 4 of U. S. patent 3,441,071. The accused method used by JEIM for the production of integrally hinged containers infringes claims 2–6 of U. S. patent 3,452,125 and such method when used to produce non-integrally hinged containers infringes claim 4 thereof.

7. The statutory definition of patent infringement is embodied in 35 U.S.C. Section 271, and specified, *inter alia,* that whoever actively induces infringement of a patent shall be liable as an infringer, 35 U.S.C. Section 271(b).

8. Defendant Park has infringed product claims 1, 2 and 4 of U. S. patent 3,441,071 by selling the accused containers made by JEIM. In addition, Park has committed further infringement by actively inducing JEIM's infringement through, *inter alia,* its role as the distribution arm for such containers, as well as by procuring information of Grace used in subsequent production by JEIM of said containers. Fromberg, Inc. v. Thornhill, 315 F.2d 407, 411–412 (5th Cir. 1963); Gould-National Batteries, Inc. v. Sonotone Corp., 130 USPQ 26, 29 (N.D.Ill.1961).

9. The defendant, Evans, having had full managerial and policy control of both Park and JEIM during the period of infringement, as well as having actively participated in the design, manufacture and promotion of the accused containers has likewise induced infringement by JEIM and Park and, accordingly, is equally liable as an infringer. Panther Pumps & Equipment Co. v. Hydrocraft, Inc., 468 F.2d 225, 233 (7th Cir. 1972); Rex Chainbelt, Inc. v. General Kinematics Corp., *supra* at page 348; International Manufacturing Co., Inc. v. Landon, Inc., 336 F.2d 723, 728–729 (9th Cir. 1964), cert. denied 379 U.S. 988, 85 S.Ct. 701, 13 L.Ed.2d 610, reh. denied 380 U.S. 938, 85 S.Ct. 936,

13 L.Ed.2d 825; State Bank of Annawan v. Rendispos Corp., 173 USPQ 136, 142, 143 (S.D.Ill.1971); Superior Testers, Inc. v. Damco Testers, Inc. et al., 315 F.Supp. 934, 935 (E.D.La.1970); Eversharp, Inc. v. Fisher Pen Co., 204 F.Supp. 649, 676 (N.D.Ill.1961).

10. Infringement of the claims in suit by the defendants has been shown to be willful and deliberate.

It is therefore ordered that plaintiff is entitled to an accounting before a Master to be hereinafter appointed by the Court to make a finding as to the amount of damages plaintiff has suffered, which finding of damage shall be trebled in view of the willfulness of defendants' act of infringement.

It is further ordered that plaintiff is entitled to reasonable attorneys' fees against defendants, including attorneys' fees before a Master, and costs.

It is further ordered that an injunction should issue against further infringement of the aforesaid patent claims by each of the defendants and their privies.